**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| DANIEL DAVIS, | ) | CASE NO.  5:12-cv-2489 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| | ) | |
| WEINSTEIN & RILEY, P.S., | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court upon the motions of defendant Weinstein & Riley, P.S., ("defendant") to refer this matter to the United States Bankruptcy Court for the Northern District of Ohio (Doc. No. 10) and, in the alternative, for summary judgment (Doc. No. 11). Plaintiff Daniel Davis ("plaintiff" or "Davis") has filed oppositions in response, (Doc. Nos. 14, 16, respectively) and defendant has filed replies (Doc. Nos. 15, 17, respectively). For the following reasons, defendant's motions are **DENIED**.

**I. BACKGROUND**

On April 25, 2002, Davis filed a voluntary bankruptcy petition under Chapter 7 in the United States Bankruptcy Court for the Northern District of Ohio, which included a debt owed to MBNA America Bank, N.A. ("MBNA"). *In re Davis*, No. 02-51848-mss (*Davis I*), Doc. No. 1 (Bankr. N.D. Ohio); (Doc. No. 16 at 127). On August 16, 2002, MBNA commenced an adversary proceeding asserting that a $9,000 debt owed MBNA by Davis (the "Debt") was nondischargeable under 11 U.S.C. § 523 (a)(2) as having been obtained by "false pretenses, a false representation, or actual fraud." *MBNA Am. Bank NA v. Davis*, No. 02-05238-mss, Doc.

1

No. 1 (Bankr. N.D. Ohio). Davis did not respond, and on October 23, 2002, MBNA filed a motion for default judgment, *Id.* at Doc. No. 6, which the bankruptcy court granted on November 20, 2002, entering judgment for MBNA and against Davis in the amount of $9,150. *Id.* at Doc. No. 7.

Fast-forward almost ten years. On March 24, 2012, Davis filed another voluntary bankruptcy petition under Chapter 7 in the United States Bankruptcy Court for the Northern District of Ohio. *In re Davis*, No. 12-50971-mss (*Davis II*), Doc. No. 1 (Bankr. N.D. Ohio). Schedule F of the 2012 petition shows MBNA as a creditor with respect to a purported $10,000 debt owed by Davis for a 2005 credit card claim. *Id.* at 15.[1] Notice of the 11 U.S.C. § 341(a) meeting of creditors, scheduled for May 22, 2012, was sent to MBNA via electronic transmission on March 28, 2012. *Id.* at Doc. No. 7. On April 3, 2012, Davis filed his certification of completion of a course in personal financial management. *Id.* at Doc. No. 8. On May 23, 2012, the Chapter 7 trustee issued her report, certifying that the meeting of creditors had occurred and that Davis's estate was fully administered. *Id.* at Docket No. 9. The bankruptcy judge issued an order of discharge on July 25, 2012 *Id.* at Doc. No. 10. Notice of the discharge was provided to MBNA on July 27, 2012, *Id.* at Doc. No. 11, and the case was closed on July 31, 2012, *Id.* at Doc. No. 12.

Defendant Weinstein & Riley, P.S., is a corporation whose principal business purpose is the collection of debts owed to another. (Doc. No. 1, Compl. ¶¶ 5–7; Doc. No. 6, Answer ¶¶ 5–7.) According to plaintiff, among those debts defendant has attempted to collect is

---

[1] Despite the difference between the credit card debt amount listed on Schedule F of the 2012 petition ($10,000) and the credit card debt in 2002 ($9,150), and despite the description indicating that the debt on Schedule F of the 2012 petition is a 2005 (versus a 2002) credit card debt, neither party has argued the credit card debt listed by Davis on Schedule F of the 2012 petition does not refer to the credit card debt from 2002.

2

the default judgment entered by the bankruptcy court in favor of MBNA and against Davis on November 20, 2002 (the "Debt"). (Doc. No. 6 ¶ 8.) Defendant's alleged attempts to collect the Debt are the subject of the instant lawsuit.

On October 4, 2012, Davis filed suit against defendant in this Court, asserting three violations of the Fair Debt Collection Practices Act ("FDCPA"). (Doc. No. 1.) According to Davis, defendant sent him a letter attempting to collect the Debt after he filed his second voluntary bankruptcy petition on March 24, 2012, both before and after he informed defendant of the bankruptcy. (Doc. No. 1 ¶¶ 9–12.) Defendant claims that its records "appear to show" that the letter was sent prior to March 24, 2012. (Doc. No. 6 ¶ 10.)

Davis claims that "Defendant's attempt to collect a debt that is part of Plaintiff's bankruptcy violates the FDCPA."[2] (Doc. No. 1 ¶ 13.) Defendant asserts that the Debt was never

---

[2]Specifically, plaintiff asserts violations of 15 U.S.C. §§ 1692e(2) and (10), and Section 1692f. They read, in pertinent part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (2) The false representation of–
>     (A) the character, amount, or legal status of any debt; or
>     (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
>
> . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e;

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

15 U.S.C. § 1692f.

3

discharged, and that efforts to collect it thus could not have violated the FDCPA. (Doc. No. 6 ¶ 13.) After filing its answer, defendant brought the subject motions.

## II. ANALYSIS

Through his briefing, which is peppered with vague and underdeveloped theories and arguments,[3] defendant seeks referral of the case to the United States Bankruptcy Court for the Northern District of Ohio or, alternatively, for judgment as a matter of law. The Court will address each request in turn.

**A. Referral is Inappropriate Because the Bankruptcy Court Lacks Jurisdiction**

All federal courts, including bankruptcy courts, are courts of limited jurisdiction. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). In the case of bankruptcy courts, the jurisdiction flows from 28 U.S.C. §§ 1334 and 157. While § 1334(a) gives the district court "original and exclusive jurisdiction of all cases under title 11," § 1334(b) confers on the district court "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §§ 1334(a) and (b). Section 157 permits the district court to refer that jurisdiction to the bankruptcy court. *See* 28 U.S.C. § 157(a). To fall under the jurisdictional grant of § 1334, "a proceeding need only be 'related to' a case under title 11." *Sanders Confectionery Prods., Inc. v. Heller Fin. Inc.*, 973 F.2d 474, 482 (6th Cir. 1992).

A civil proceeding is "related to" a bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers (In re Dow Corning Corp.)*,

---

[3] "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

86 F.3d 482, 489 (6th Cir. 1996) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1989)). "Related to" jurisdiction exists "if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Lindsey*, 86 F.3d at 489.

The "vast majority" of courts that have addressed this issue have concluded that bankruptcy courts lack jurisdiction over post-petition FDCPA claims. *Marshall v. PNC Bank (In re Marshall)*, 491 B.R. 217, 230 (Bankr. S.D. Ohio 2012) (collecting cases); *see also Schramm v. TMS Mortg., Inc. (In re Schramm)*, No. 01-11026, 2006 Bankr. LEXIS 4470, at *9–*12 (Bankr. N.D. Ohio July 6, 2006). In *Marshall*, the bankruptcy court determined it lacked jurisdiction over a debtor's post-petition claim that a violation of the discharge injunction in turn violated the FDCPA, which is exactly how defendant construes plaintiff's claim here.

It would be a poor exercise indeed of this Court's discretion to refer this case to bankruptcy court when the bankruptcy court itself does not have jurisdiction to hear it. Defendant's motion to refer the case to bankruptcy court is denied.

**B. Defendant Is Neither Entitled to Summary Judgment nor a Motion to Dismiss**

The issues that emerge from the briefing with respect to "summary judgment," as the defendant phrases it, can be grouped into two categories: (1) the legal status of the FDCPA vis-à-vis the bankruptcy code; and (2) the legal status of the Debt following the 2002 default judgment of nondischargeability and as it may have been modified by the subsequent judgment of discharge in 2012. Under the first category, defendant makes two arguments that resemble those generally made upon motions to dismiss pursuant to Civil Rule 12(b), whereas defendant's

argument in the second category could properly be considered as one for summary judgment pursuant to Civil Rule 56. The Court will address each argument separately.

*1. The bankruptcy code does not foreclose plaintiff's claims.*

The portion of defendant's brief touching upon the relationship between the bankruptcy code and the FDCPA begins with defendant's citation in both reply briefs to *Kepner v. United States*, 195 U.S. 100 (1904). *Kepner* is a Supreme Court case recognizing the "well-settled principle of construction that specific terms covering the given subject-matter will prevail over general language of the same or another statute which might otherwise prove controlling." *Id.* at 125. Defendant offers this principle in support of the notion that "[t]he specific terms of the Discharge Injunction under 11 U.S.C. § 524 would prevail over the general [FDCPA]" (Doc No. 10-7 at 77). No additional relevant argument is made, nor is any further authority cited.

Addressed directly, it is clear from the *Kepner* quote itself that it is inapplicable here. The *terms* of the discharge injunction are no more specific than the terms of the FDCPA. What defendant is really attempting to argue is that the FDCPA, which can be violated in several ways, one of which happens to be the violation of the discharge injunction, a wholly different statute, is somehow more "general" than the discharge injunction. Defendant has not offered any support for this proposition. Plaintiff's response takes a different path, construing defendant's argument of statutory construction as an assertion that the bankruptcy code repealed the FDCPA by implication

To the extent defendant has argued that the bankruptcy code has implicitly repealed the FDCPA, the Court observes that there appears to be a circuit split on the issue, courtesy of the Seventh and Ninth Circuits. The Sixth Circuit has not yet weighed in. In the older

6

case, *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002), the Ninth Circuit examined a class action brought on behalf of Chapter 7 bankruptcy debtors against Wells Fargo Bank. Plaintiffs raised claims for violations of the discharge injunction both under the bankruptcy code and the FDCPA. The court found Walls's FDCPA claim to be precluded, because "[t]he Bankruptcy Code provides its own remedy for violating [the discharge injunction], civil contempt under § 105. To permit a simultaneous claim under the FDCPA would allow through the back door what Walls cannot accomplish through the front door—a private right of action." *Id.* at 510.

A narrow reading of *Walls* limits the case to allegations of violating the discharge injunction, when such allegations are brought *both* under the bankruptcy code and under the FDCPA. *See Henderson v. Weinstein & Riley, P.S.*, No. 11-cv-2607, 2011 WL 6826117, at *2–*3 (D.N.J. Dec. 27, 2011) (because the conduct complained of occurred prior to discharge, *Walls* did not apply, because the discharge injunction was not implicated); *Rios v. Bakalar & Assocs., P.A.*, 795 F. Supp. 2d 1368, 1370 (S.D. Fla. 2011) (the "better reading of the *Walls* holding is this: the Ninth Circuit held that an alleged violation of a bankruptcy injunction does not constitute an unfair and unconscionable collection practice that violates § 1692f [of the FDCPA]").

The Seventh Circuit framed the issue differently. *See Randolph v. IMBS, Inc.*, 368 F.3d 726 (7th Cir. 2004). "When two federal statutes address the same subject in different ways, the right question is whether one implicitly repeals the other—and repeal by implication is a rare bird indeed. It takes either irreconcilable conflict between the statutes or a clearly expressed legislative decision that one replace the other." *Id.* at 730. For the Seventh Circuit, neither

7

irreconcilable conflict nor legislative intent prompted implicit repeal. Rather, differences in scienter requirements, types and amounts of damages and fees recoverable, and limitations periods between the bankruptcy code and the FDCPA demonstrated their independent, yet complementary, natures. The court noted, "[i]t is easy to enforce both statutes, and any debt collector can comply with both simultaneously." *Id.* "[T]he statutes overlap . . . [but] [o]verlapping statutes do not repeal one another by implication; as long as people can comply with both, then courts can enforce both." *Id.* at 731. Indeed, the court in *Randolph* appears unsure how broadly to interpret the holding of *Walls*, noting that "[t]o the extent *Walls* holds otherwise, we do not follow it[.]" *Id.* at 733.

Courts within this circuit that have addressed the issue have sided with *Randolph* over *Walls*. *See In re Marshall*, Bankr. 491 B.R. 217, 224–27 (Bankr. S.D. Ohio 2012) (Buchanan, J.) *Kline v. Mortgage Elec. Sec. Sys.*, 659 F. Supp. 2d 940, 950–51 (S.D. Ohio 2009) (Rice, J.); *Evans v. Midland Funding, LLC*, 574 F. Supp. 2d 808, 817 (S.D. Ohio 2008) (Dlott, J.) (noting that plaintiff was "not seeking to hold Defendants in contempt for violation of the bankruptcy discharge order. Rather, he seeks to establish only FDCPA liability"); *Gunter v. Columbus Check Cashiers, Inc. (In re Gunter)*, 334 B.R. 900, 904–05 (Bankr. S.D. Ohio 2005) (Calhoun, J.).

Similarly, since the *Randolph* decision, almost all courts outside the circuit to examine the issue have rejected *Walls*, favoring *Randolph*. *See, e.g.*, *Gamble v. Fradkin & Weber, P.A.*, 846 F. Supp. 2d 377, 381–83 (D. Md. 2012) (adopting *Randolph* and noting that "to the extent that *Walls* stands for such a broad rule, it appears to be an outlier"); *Rios v. Bakalar & Assocs., P.A.*, 795 F. Supp. 2d. 1368, 1369–70 (S.D. Fla. 2011) (noting that "[t]he *Walls* decision

8

does not explain how the Bankruptcy Code repealed the FDCPA); *In re Atwood*, 452 B.R. 249, 251–53 (Bankr. D.N.M. 2011); *Clark v. Brumbaugh and Quandahl, P.C.*, 731 F. Supp. 2d 915, 919–21 (D. Neb. 2010) (collecting cases within the Eighth Circuit that had adopted *Randolph* and rejected *Walls* and following suit); *In re Rogers*, 391 B.R. 317, 325–26 (Bankr. M.D. La. 2008); *Drnavich v. Cavalry Portfolio Serv., LLC*, No. Civ. 05-122 PAMRLE, 2005 WL 2406030, at *1–*2 (D. Minn. Sept. 29, 2005); *Burkhalter v. Lindquist & Trudeau, Inc.*, No. 4:04CV1803-DJS, 2005 WL 1983809, at *1 (E.D. Mo. Aug. 16, 2005).

As with other district judges within this circuit and the vast majority of post-*Randolph* cases outside the Ninth Circuit, the Court adopts the reasoning in *Randolph*. Defendant has neither shown that an irreconcilable conflict exists between the bankruptcy code and the FDCPA, nor identified any legislative intent for the bankruptcy code to replace the FDCPA in areas of overlap. Accordingly, the bankruptcy code does not preclude plaintiff's claims, and defendant is not entitled to a motion to dismiss on this basis.

2.         *Violation of a discharge injunction can give rise to an FDCPA claim.*

Defendant next asserts that a violation of the discharge injunction cannot give rise to an FDCPA claim. (Doc. No. 11-7 at 103.) Support for this argument is scant; indeed, it is mainly limited to the observation that the Sixth Circuit has not yet addressed the issue. Nevertheless, the Court is persuaded that an FDCPA claim can lie for alleged violation of a discharge injunction. "A demand for immediate payment while a debtor is in bankruptcy (or after the debt's discharge) is 'false' in the sense that it asserts that money is due, although, because of the automatic stay or the discharge injunction, it is not. A debt collector's false statement is presumptively wrongful under the [FDCPA] . . . ." *Randolph*, 368 F.3d at 728 (citations

omitted); s*ee also Bussard v. Shermeta, Adams, and Von Allmen, P.C.*, Civil Action No. 13-10877, 2013 WL 3353942, slip op. at *3 (E.D. Mich. July 3, 2013) (identifying the existence of a claim by negative implication in holding that, "[b]ecause Plaintiff's . . . debt was not discharged, Defendant did not violate the FDCPA when it contacted Plaintiff and informed him that he was still liable for the debt"); *Gunter v. Columbus Check Cashiers, Inc.*, 334 B.R. 900, 906 (Bankr. S.D. Ohio 2005) (allegations in Chapter 7 debtor's complaint regarding debt collector's continuing attempts to collect discharged pre-petition debt, even after it had been advised of debtor's discharge in bankruptcy and asked to cease and desist in its collection efforts, were sufficient to state claim for relief under § 1692d of the FDCPA). Indeed, courts finding no FDCPA claim for a violation of a discharge injunction also follow *Walls* and hold that the bankruptcy code overruled the FDCPA on the issue. *See, e.g.*, *Goad v. MCT Corp*, No. 09cv1321 BTM(POR), 2009 WL 4730905, at *3 (S.D. Cal. Dec. 7, 2009). The Court has already rejected that argument. Accordingly, this Court finds that defendant's argument to dismiss on this basis lacks merit.

3.	*The Legal Status of the Debt*

In addition to the structural arguments discussed above, the briefs address at length the legal status of the Debt and the preclusive effect of the 2002 default judgment of the Debt's nondischargeability. The filing of a bankruptcy petition automatically stays, among other things, "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case[.]" 11 U.S.C. § 362(a)(6). In a Chapter 7 case, the automatic stay ends at "the time a discharge is granted or denied[.]" 11 U.S.C. § 362(c)(2)(C). Under § 362(d), a party in interest may seek relief from the automatic stay before it ends. Defendant claims that,

10

because the Debt was deemed nondischargeable in plaintiff's 2002 bankruptcy proceeding, defendant's actions could not violate the automatic stay provided by 11 U.S.C. § 362 or the discharge injunction provided by 11 U.S.C. § 564. (Docs. No. 10-7 at 75, 11-7 at 103.) Plaintiff frames the question as one of issue preclusion and asserts that he was not precluded by the 2002 default judgment from re-listing the Debt in his 2012 bankruptcy petition.

The Court cannot determine the legal status of the Debt or the 2002 judgment's preclusive effect because several factual issues remain unresolved.[4] First, and most importantly, plaintiff's 2012 bankruptcy petition lists a 2005 credit card debt in the amount of $10,000 payable to MBNA. The default judgment in plaintiff's first bankruptcy lists the debt at $9,000 (with $150 in costs) in 2002, several years before the 2005 debt listed in the 2012 bankruptcy petition. The parties take for granted that these debts are one and the same, but the Court cannot be so sanguine. The facts relating to the date and amount of the Debt must develop further. Second, the parties dispute the extent of defendant's attempts to collect on plaintiff's debt following the filing of plaintiff's bankruptcy petition in March 2012. (*Contrast* Doc. No. 1 at 2 *with* Doc. No. 6 at 27.) Plaintiff has no claim if defendant's debt collection efforts ceased once plaintiff filed the 2012 bankruptcy petition. Factual development of this essential issue is utterly lacking. The Court will not consider this prong of the defendant's motion until the parties have had an opportunity to conduct discovery on these and other disputed factual issues.

---

[4] In his response to defendant's motion for summary judgment, plaintiff cites Federal Rule of Civil Procedure 56(f), requesting a denial of summary judgment while the parties take additional discovery. The Court reminds the parties that the 2010 Amendments to the Rules moved the provisions of Rule 56(f) to Rule 56(d). Further, the Court notes that Rule 56(d) allows the court to "defer considering the motion [for summary judgment] or deny it," or to "allow time to obtain affidavits or declarations or to take discovery" if the nonmoving party can "show[] by affidavit or declaration, that, for specified reasons, it cannot present facts essential to justify its opposition" to summary judgment. Fed. R. Civ. P. 56(d). While the plaintiff was quite correct to ask the Court to defer ruling on a motion for summary judgment until discovery has occurred, the plaintiff should have submitted affidavits or declarations to support this request.

### III. CONCLUSION

For the foregoing reasons, defendant's motion to refer the case to bankruptcy court is **DENIED**. Insofar as defendant has made a motion to dismiss pursuant to Civil Rule 12(b), the same is **DENIED**. Insofar as defendant has made a motion for summary judgment pursuant to Civil Rule 56, the motion is **DENIED** without prejudice.

**IT IS SO ORDERED**.

Dated: September 26, 2013

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**